UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHANNON KELLY CAPLES,

        Plaintiff,

v.                                                 Case No. 17-cv-1797-pp

ROBERT JOHN THIEL, *et al.*,

        Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 8) AND GRANTING PLAINTIFF LEAVE TO AMEND COMPLAINT**

---

**I.    Procedural Background**

The plaintiff is representing herself. She filed her complaint on December 27, 2017, and paid the $400 filing fee. Dkt. No. 1. On the civil cover sheet that she filed with the complaint, the plaintiff marked the box that said that this court has jurisdiction because her case involves a federal question; she marked the box next to "Employment" as the nature of her suit, and she typed "Title VI, Retalliation [sic], ADA Employment Act, Equal Pay" in the box asking for a brief description of the cause of action. Dkt. No. 1-1. The complaint names Robert John Thiel, Dale Jacoby, Kevin Kalkofen and Ryan Will as defendants. Dkt. No. 1 at 1.

A little over a month later, on February 6, 2018, the court received waiver of service forms for all defendants, agreeing that they would answer or otherwise respond to the complaint within sixty days of January 2, 2018. Dkt. No. 6. On March 5, 2018, the defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. No. 8. The plaintiff filed her response on March 12,

1

2018, dkt. no. 13, and the defendants filed their reply brief on March 27, 2018, dkt. no. 15. April 2, 2018, the court received a letter from the plaintiff, responding to defendants' reply brief. Dkt. No. 16.

The court realizes that it has been eleven months since the parties fully briefed the motion to dismiss. It regrets this extensive delay, and can blame it only on the court's case load and crowded docket. The court agrees with the defendants that the plaintiff's complaint does not state a claim upon which this court can grant relief, but it will give the plaintiff an opportunity to amend.

## II. Allegations in the Complaint

The plaintiff worked for Badger Tag and Label Corporation in their Random Lake, Wisconsin office from September 2009 until May 2017. Dkt. No. 1 at 3. She says that Badger Tag "is a manufacturer of custom tags and adhesive labels." Id. In May of 2011, she accepted a promotion to "an accounting/HR position," but she says that "[b]ecause [she] was female and going through a divorce, [she] did not receive the same wage, benefits, pension, vacation, or full-time status as Eric Jagow the male predecessor." Id. at 3-4. The plaintiff alleges that she inquired via e-mail to defendant Dale Jacoby "several times for 4 years with no response." Id. at 4. (The plaintiff does not explain who Dale Jacoby is.) The plaintiff also asserts that in August 2014, she got passed over for the open position of general manager and that "there is not a female in a position of authority." Id. She alleges that in a December 2016 review, she pointed out "the different job descriptions and lack of even making entry level pay for any of the position." Id. at 5.

The complaint states that in January 2017, the plaintiff reached out to defendant Robert Thiel via email "to report management issues with Dale Jacoby and Kevin Kalkofen[.]" Id. She says that she asked for "change in the

approach and supervision techniques of Dale Jacoby" due to her 2004 diagnosis of "health issues;" she does not specify the nature of those health issues, except to say that they fall under the definition of disability in the Americans with Disabilities Act. Id. The plaintiff asserts that on January 19, 2017, she wrote a letter to her local Equal Employment Opportunity Commission outlining her complaints of sex discrimination, retaliation and disability discrimination. Id. at 3.

The complaint alleges that about two months later, on March 31, 2017, the plaintiff's mother had passed away and she needed to go meet with the coroner. Id. at 4. She says that she told Robert Thiel "what had happened and that she had to leave," and that he then "followed her to the timeclock and wanted to engage in talks with her on why Ms. Caples filed the EEOC complaint." Id. She claims that Thiel was upset, and felt that the plaintiff "was hiding things from him." Id. She asserts that Thiel also wanted to discuss a "common keying error in an online bill pay," but that they were standing in front of coworkers as this was happening, and that she was in despair, crying and trying to leave. Id. The plaintiff says she told Thiel she would have to come back to discuss these issues further. Id.

The complaint alleges that a little over three weeks after this incident, on April 25, 2017, defendant Jacoby was in her office "after she left for an appointment," "going through her computer, and her files." Id. at 5. She says that Jacoby "confronted" the coworker who told her about this. Id. She alleges that Jacoby "often" was in her office without her knowledge, going through her computer and her files. Id. She thinks that he went through her confidential information to get notes that she was keeping "for the hostility and retaliation that was going on." Id.

3

The plaintiff asserts that that same day—April 25, 2017—Jacoby and Kalkofen presented her a "Last Chance Agreement;" she did not sign it, because she was "disputing the items in the agreement." Id. She asserts that Badger Tag was not "following the performance policy in the handbook." Id. She stated that the agreement was "retaliation" and that she needed to speak to Barbara Ystenes, "the investigator for [her] complaint." Id. She says she stated that Ystenes was on vacation, and that the plaintiff would "reach out to her, and make a decision," because Ystenes was not coming back until April 28, 2017. Id.

The plaintiff says that the next day—April 26, 2017—she emailed her disputes with the Last Chance Agreement to Ystenes (whom she identifies as "EEOC investigator"), Jacoby, Kalkofen and Thiel. Id. She indicated that she would speak with an investigator before she signed; she felt that signing would indicate that she agreed with things in the agreement that either were outdated or were the "outcome of a procedure change" by Jacoby and Thiel which "strayed away from common Accounts Payable payment practices to avoid human error." Id. She identifies other things in the agreement she disputed; she believes that she was given this agreement because Badger Tag was trying to cut costs. Id. She alleges that the agreement "was a way to force the plaintiff . . . to end employment at Badger Tag and Label[.]" Id.

The complaint alleges that on May 2, 2017, the plaintiff emailed defendant Ryan Will, asking for a correct copy of his cell phone bill. Id. at 6. She asserts that Will had "turned in the same cellphone bill for December 2016, and January 2017, in which Ryan Will was now on his cousin Mark's cellphone plan." Id. She says that she needed the cell phone bill to investigate "the origin [of] the spoof email for a wire transaction contained in the Last

4

Chance Agreement for the plaintiff." Id. She asserts that at 3 p.m. that day, "upon the arrival of Dale Jacoby[,] Kevin Kalkofen, Robert Thiel, and Ryan Will," she was asked into the conference room to sign the Last Chance Agreement. Id. She says that when she did not sign the agreement, she "was escorted out of Badger Tag and Label." Id. The plaintiff alleges that she "was forced out" of Badger Tag and Label by Jacoby, Thiel and Kalkofen in retaliation for her filing an EEOC complaint. Id.

Finally, the plaintiff asserts that on May 17, 2017, Jacoby, Kalkofen and Thiel had their lawyer submit a response to the EEOC "for the claim of retaliation filed by Barbara Ystenes in response to information that the plaintiff . . . submitted to her. Id. The plaintiff asserts that the response contained misinformation and false accounts of what occurred, and withheld important information, which "was done to issue a decision in the favor of Badger Tag and Label." Id.

For relief, the plaintiff asks for defendants Jacoby and Kalkofen to be demoted or terminated and for defendant Ryan Will to be demoted for abuse of authority. Id. at 7. She also seeks damages. Id.

## III. The Motion to Dismiss

The defendant contends that the court should dismiss the case under Fed. R. Civ. P. 12(b)(6) because the plaintiff (a) "raises vague allegations" of employment discrimination based on sex and of an ADA violation and (b) "has not filed this action against any employer, and instead has filed this action against individuals who worked for her employer." Dkt. No. 9 at 2. After reciting the standard for dismissal under Rule 12(b)(6), the defendants argue that under both the ADA and Title VII, a plaintiff cannot sustain a claim against her fellow employees for violations of those statutes. The defendants

5

cite cases supporting this proposition. Dkt. No. 9 at 6-7 (citing Geier v. Medtronic, 99 F.3d 238, 244 (7th Cir. 1996); Bryson v. Chi. State Univ., 96 F.3d 912, 917 (7th Cir. 1996); Williams v. Banning, 72 F.3d 552 (7th Cir. 1995); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276 (7th Cir. 1995); Hudson v. Soft Sheen Prods., Inc., 873 F. Supp. 132 (N.D. Ill. 1995); Johnson v. N. Ind. Pub. Serv. Co., 844 F. Supp. 466 (N.D. Ind. 1994)). They note that the plaintiff's complaint "name[d] only individuals who worked for her employer, Badger Tag, as Defendants" and did not allege that any of these individuals employed the plaintiff. Id. at 8.

The plaintiff responded by stating that in "the Guide to Filing packet" she "received the instructions on what to put in the complaint and what not to put in the complaint." Dkt. No. 13 at 2. (The plaintiff is referring "Guide to Filing Non-Prisoner Complaints Without a Lawyer in The United States District Court for the Eastern District of Wisconsin," available on the court's web site at https://www.wied.uscourts.gov/forms-pro-se-litigants.) She says that the guide explicitly told her not to attach a lot of papers or long statements to the complaint and that all she needed to do was make a short statement explaining "who," "what," "when," "where," and "why." Id. She explains the ways she believes her complaint complied with these instructions. Id. at 2-3. She indicates page 4 of the guide instructs employment discrimination plaintiffs that they are "required to ask the EEOC to address" their claims. Id. at 3. She indicates that she attached the cover sheet from the EEOC, id. at 3, and she did attach that document to her response, dkt. no. 13-1 at 6.

Regarding the defendants' allegations that she sued individual employees and not her employer, the plaintiff says that page 2 of the guide "states to

6

name the defendants not the employer if the plaintiff was harmed while doing her job. It states to tell the court the name of the employers." Id. at 2.

The plaintiff concludes by asking the court to deny the motion to dismiss, and that it give her a chance to amend her complaint if the court thinks it is necessary. Id. at 4. She asserts that the defendants were supposed to file their answer by March 2, 2018, because they waived service, and she asks the court to "consider a default judgment be entered instead of Motion to Dismiss Dated this 15th day of December, 2009." Id.

The defendants replied that the court should strike the plaintiff's response because she didn't sign it. Dkt. No. 15 at 2. They reiterate that the facts in the complaint do not allow the court to draw the reasonable inference that the individual defendants were liable for employment discrimination. Id. They note that the plaintiff did not respond to their argument that she did not allege that any of the four defendants were her employers. Id. at 3. They argue that the Guide does not say what the plaintiff believes it says. Id. at 4. Regarding the plaintiff's request that the court allow her to amend her complaint, the defendants respond that she could have amended the complaint within twenty-one days of the date on which they filed the motion to dismiss, but she didn't. Id. at 5. They argue that it would be futile for the court to allow her to amend, because she has indicated that she wants to sue the individual defendants and not her employer. Id. They also assert that the plaintiff has not exhausted her administrative remedies, because she does not allege that she filed an EEOC complaint against the defendants. Id. They indicate that even if she had a claim against the individual defendants, it is too late for her to file an EEOC complaint. Id. at 6. Finally, they argue that they timely filed their responsive pleading and that default judgment is not appropriate. Id. at 6-7.

7

**IV. Analysis**

    A.    <u>Rule 12(b)(6) Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting <u>Lang v. TCF Nat'l Bank</u>, 249 F. App'x 464, 466 (7th Cir. 2007)). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 678 (quotations omitted). On a Rule 12(b)(6) motion, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Silha v. ACT, Inc.</u>, 807 F.3d 169, 173 (7th Cir. 2015) (quotation omitted). Because the plaintiff proceeds without legal representation, the court is obliged to liberally construe the plaintiff's complaint. <u>Erikson v. Pardus</u>, 551 U.S. 89, 94 (2007).

    B.    <u>Definition of "Employer" Under Title VII, ADA</u>

The complaint does not identify which federal statutes the plaintiff believes the defendant violated, but as the Guide explains, she wasn't required to. Considering her allegations, along with the civil cover sheet, the court believes that the plaintiff is trying to sue four individuals—Robert John Theil, Dale Jacoby, Kevin Kalkofen and Ryan Will—for gender discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*,

disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.*, and violations of the Equal Pay Act, 29 U.S.C. §206(d).

The complaint says that the plaintiff worked for Badger Tag and Label Corporation, implying that Badger Tag and Label was her employer, but she has not sued Badger Tag and Label. She has sued individuals—Kalkofen, Will and Jacoby, whom she says were employees of Badger Tag and Label, and Thiel, whom she alleges "owns the company." Dkt. No. 1 at 7.

Title VII prohibits *employers* from discriminating on certain bases, including gender. 42 U.S.C. §2000e-2 provides that

> [i]t shall be an unlawful employment practice for an employer—(1) to fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §2000e-2. The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. §2000e(b).

The Americans with Disabilities Act provides that "[n]o covered *entity* shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112 (emphasis added). The statute defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee" and defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more

9

employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and any agent of such person . . . ." 42 U.S.C. §12111(2); 42 U.S.C. §12111(5)(A).

The Seventh Circuit Court of Appeals has held that individual employees cannot be held liable under the ADA and Title VII. In Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995), the Seventh Circuit Court of Appeals decided that "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer" and affirmed the district court's dismissal under Fed. R. Civ. P. 12(b)(6). In EEOC v. AIC Sec. Investigations, Inc., 55 F.3d 1276, 1282 (7th Cir. 1995), the Seventh Circuit decided that the president of a company could not be held individually liable under the ADA's definition of an employer: "We hold that individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." These Seventh Circuit decisions are binding on this court—that means that the court cannot allow a plaintiff to proceed with a lawsuit under either of these statutes unless she alleges that the defendants she is suing qualify as "employers."

The plaintiff insists that the Guide to Filing Non-Prisoner Complaints Without a Lawyer in The United Sates District Court for the Eastern District of Wisconsin instructed her not to name the employer. But that is not what the Guide says. There is a section of the Guide that tells plaintiffs what to put into their complaints. Guide, page 2. First, it instructs plaintiffs that they need a caption, containing the plaintiff's name and the name of the people the plaintiff is suing. It explains that the people the plaintiff is suing are called "defendants." In parentheses, it says, "If the defendants harmed you while doing their jobs, tell the Court the name and address of the employers, if known to you." Id. The Guide did not tell the plaintiff not to sue her employer.

It instructed only that if she is suing someone who harmed her while that person was performing his job, she should provide the court with the name of the person's employer and the employer's address, if she knows it.

The Guide is not law. It is a tool to help people who choose to proceed in federal court without the help of a lawyer navigate the court system. Even plaintiffs who do not have lawyers must follow the law, and the law is found in the statutes and federal court decisions, not the court's self-help guide.

Because the plaintiff has not alleged facts to demonstrate that any of the four people she has sued meet the definition of "employers" under either Title VII or the ADA, her complaint does not state a claim under either of those laws.

C.  Definition of "Employer" Under the Equal Pay Act

The Equal Pay Act, 29 U.S.C. §206(d) provides that "[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex[.]" The Equal Pay Act is part of the Fair Labor Standards Act ("FLSA") and applies that statute's definitions. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. §203(d).

The defendants did not address whether a plaintiff may bring a cause of action under the Equal Pay Act against individual defendants. District courts in this circuit have come to differing conclusions. Compare Harris v. City of Harvey, 992 F.Supp. 1012 (N.D. Ill. Jan. 30, 1998) with Downs v. Gebco Mach. Inc., 873 F. Supp.2d 1010 (S.D. Ill. June 6, 2012). The court does not need to determine this issue now, because even if a plaintiff can sue an individual under the Equal Pay Act, that individual must be a person who is "acting directly or indirectly in the interest of an employer in relation to an employee."

11

The court cannot tell from the allegations in the complaint whether the four people the plaintiff has sued meet that definition. The plaintiff does say that Thiel owns Badger Tag, but she does not explain who the other three defendants are, or how they were related to her in terms of her employment. She does not indicate that any of the defendants were her supervisors or had authority over her.

D. <u>General Discrimination Allegations</u>

The court appreciates that the plaintiff carefully read the Guide and tried to comply with it by stating the facts. But the Guide tells her that she must show how whatever happened to her "injured," or "harmed" her. The plaintiff says, for example, that because she was female and going through a divorce, she did not get the same wages and benefits as her predecessor, who was male. She does not say who made the decision about what pay and benefits she would receive, or why (other than the fact that she is female and her predecessor was male) she believes that the different wages and benefits were based on her gender. She says that she asked Thiel to change the approach that Jacoby and Kalkofen used because of her health issues, but she does not explain what her health issues were, or what "approach" Jacoby and Kalkofen used, or how the two issues were related to each other.

To proceed on a claim in federal court, a plaintiff must not only explain what each defendant did, but must explain how each defendant's actions harmed her. The plaintiff has not done that in this complaint. Because the plaintiff has not alleged facts showing that the defendants are "employers" under Title VII or the ADA, because she has not alleged sufficient facts to allow the court to determine whether the defendants are "employers" under the Equal Pay Act, and because the plaintiff has not alleged facts showing how

12

each defendant caused her harm, the court will grant the defendants' motion to dismiss the complaint.

### E. Leave to Amend

The plaintiff asked that if she had not stated sufficient facts to proceed, the court give her an opportunity to amend the complaint. The Seventh Circuit has repeatedly held that courts should give plaintiffs at least one chance to amend their complaints. See, *e.g.*, Robertson v. Allied Solutions, LLC, 902 F.3d 690, 699 (7th Cir. 2018) ("Ordinarily a plaintiff should have the chance to amend if she had no earlier chance to remedy the relevant deficiency."). The Federal Rules of Civil Procedure require courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The defendants argue that the court should dismiss the case because the plaintiff did not sign her response to the motion to dismiss. They are right that the plaintiff should have done so, and the court advises the plaintiff that she must sign *all* motions and objections and other pleadings that she files. That is not a reason to refuse the plaintiff her request to amend.

The defendants argue that the plaintiff has consistently maintained that she wants to sue the individual defendants and has never expressed an intent to sue the entity they believe to be her "employer" as defined by Title VII and the ADA—Badger Tag. On this basis, they argue that it would be futile to allow the plaintiff to amend the complaint. This argument ignores the plaintiff's misunderstanding of the instructions in the Guide, and assumes that up to now, she understood the requirements of Title VII and the ADA. The court will not make those assumptions.

The court realizes that the plaintiff may not want to sue Badger Tag. If that is the case, the plaintiff need not amend her complaint and the court will

13

dismiss the case for failure to pursue it. On the other hand, perhaps the plaintiff can allege facts demonstrating that one or more of the four individuals she has sued qualify as "employers" under any of the statutes the court has mentioned. Perhaps after the plaintiff reads this order, she will decide that she should have sued Badger Tag. Rather than making any of these assumptions, the court will give the plaintiff an opportunity to decide what she wants to do.

If the plaintiff chooses to amend her complaint, she should consider trying to find a lawyer. Litigation in federal court is difficult, as the plaintiff may have figured out already. There are rules that apply to all parties—even parties who are representing themselves. The law is not always easy to understand.

The court understands that lawyers are expensive. There are organizations in the Milwaukee metropolitan area that provide help to people who need a lawyer. A person may call the Milwaukee Bar Association's Lawyer Referral and Information Service at (414) 274-6768 and ask for a volunteer attorney. There is no guarantee that there will be a qualified lawyer available to everyone who calls, but it is a place to start. The Milwaukee Bar Association also has a "modest means panel" of lawyers, who will represent people in some kinds of cases for a reduced fee. (The same telephone number works for the modest means panel.) Legal Action of Wisconsin has a list of volunteer lawyers who take certain kinds of cases; their number is (414) 278-7722. Or the plaintiff may seek out her own lawyer.

If the plaintiff amends without a lawyer, she must use the court's form complaint. The court is enclosing a blank complaint form with this order. She must put the word "Amended" at the top of the first page, next to the word "Complaint." She must put the case number for this case—17-cv-1797—in the

field for the case number. She must list in the caption every individual or entity whom she wants to sue. The amended complaint will take the place of the original complaint, and must be complete in itself. It cannot reference the original complaint; it has to contain within it all the facts and claims the plaintiff wishes to assert. If the plaintiff does not file an amended complaint by the deadline the court sets below, the court will dismiss the case for failure to pursue it under Civil L.R. 41(c).

      F.      <u>Default Judgment</u>

The plaintiff's request that the court enter default judgment because the defendants did not timely answer the complaint shows the dangers of a plaintiff who does not know the rules, and does not have a lawyer to help her. The waiver of service form that the defendants signed indicated that they agreed to "file and serve an answer or a motion under Rule 12 within 60 days from 1-2-18 . . . ." Dkt. No. 6 at 1. The sixty-day period comes directly from Fed. R. Civ. P. 4(d)(3), which says that a defendant who returns a waiver of service does not need to answer until 60 days after the request for waiver was sent. Sixty days from January 2, 2018 was March 3, 2018; because that is a Saturday, the deadline for the defendants to file an answer or a Rule 12 motion was Monday, March 5, 2018. That is the very day on which the defendants filed their motion to dismiss. The motion was timely, and the plaintiff is not entitled to default judgment.

**V.    Conclusion**

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 8.

The court **GRANTS** the plaintiff's request for leave to amend her complaint. Dkt. No. 13.

The court **ORDERS** that if the plaintiff chooses to file an amended complaint, she must file it in time for the court to receive it by the end of the day on **Friday, April 19, 2019**. If the court does not receive an amended complaint from the plaintiff by the end of the day on April 19, 2019, the court will dismiss the case for failure to diligently pursue it under Civil L.R. 41(c).

Dated in Milwaukee, Wisconsin this 11th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**